# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

DAVID SPICKERMAN,

                                                    Plaintiff,

        -vs-

RONALD CARR, Caseworker for Wayne County,            DECISION and ORDER
Department of Social Services, Child Protective
agency, *et al.*                                     04-CV-6226 CJS(P)

                                        Defendants.

---

## APPEARANCES

For plaintiff:                          David Spickerman, *pro se*
                                        02-B-0980
                                        Wyoming Correctional Facility
                                        P.O. Box 501
                                        Attica, NY 14011-0501

For defendant:                          Devin Lawton Palmer, Esq.
                                        John M. Wilson, II, Esq.
                                        Boylan, Brown, Code, Vigdor & Wilson, LLP
                                        2400 Chase Square
                                        Rochester, NY 14604
                                        585-232-5300, ext. 212

## INTRODUCTION

**Siragusa, J.** This civil rights action is before the Court on defendants' motion (# 35) to assert and consolidate an additional defense (qualified immunity), defendants' motion (# 18) to dismiss, which the Court has partially converted into a motion for summary judgment per its Order (# 26) of March 17, 2005, and plaintiff's motion (# 5) for appointment of counsel. For the following reasons, defendants' motion to dismiss is granted.

**BACKGROUND**

As described in his 64-page complaint filed on May 20, 2004, plaintiff is suing several employees of the Wayne County, New York, Department of Social Services. The named defendants remaining[1] in this lawsuit are: Ronald Carr, Child Protective Case-worker; Lisa Graf, Child Protective Senior Caseworker; Shannon Brendlinger, Child Protective Services Caseworker; Peggy McGall, Child Protective Supervisor; John Kane, Department of Social Services Supervisor; Richard LeBlanc, Department of Social Services Supervisor; and M. Josh McCrossen, Commissioner of Wayne County Department of Social Services, Child Protective. Plaintiff alleges that defendants[2] violated his constitutional rights in administering the child welfare programs under their control by, among other things, failing to properly investigate complaints of child abuse and failing to provide his children with safe placement when they were at risk of being abused.

On December 21, 2004, defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction under the *Rooker-Feldman* doctrine, the domestic relations exception to federal jurisdiction, and the *Younger* abstention doctrine, and also requested dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. No answers have been filed. Plaintiff responded to the motion

---

[1]The Court's Order entered July 7, 2004 (# 3) dismissed three defendants *sue sponte*.

[2]In an August 14, 2005 letter to the Court, plaintiff alleged that a month after his September 30, 2002 report to defendant Lisa Graf that his children were being neglected by their mother and that she was using drugs, the house in which they were living burned down when they were left alone and tried to cook something to eat. Plaintiff asked the Court to "add this into my Claim as evidence."

to dismiss on March 8, 2005, and, on March 17, 2005, the Court entered an Order partially[3] converting the motion to dismiss to one for summary judgment pursuant to Federal Rule of Civil Procedure 12(b), giving notice to the parties. Both parties filed additional papers in support of their respective positions, and on August 17, 2005, defendants filed their motion (# 35) to add a defense of qualified immunity. Plaintiff filed a memorandum (# 37) in opposition to that motion, but argued only that qualified immunity should not be applied, not that defendants could not raise that defense at this stage of the proceedings.

As part of their application to dismiss, defendants filed an affirmation by counsel, Devin Lawton Palmer, Esq., which alleges the facts upon which defendants now rely upon in support of both of their motions. Mr. Palmer's affirmation is based on his "personal knowledge and review of Defendants' official records and the various State Court Proceedings referenced herein." (Palmer Affirmation ¶ 1.)

Defendants allege that on October 28, 2001, plaintiff assaulted his girlfriend, Rose B. ("Rose"), who was at the time six months pregnant with their child, Timothy. The assault took place in front of Rose's and plaintiff's child, Brittany, who was two years old, Rose's child Dalyn, who was one year old, and plaintiff's child, from an earlier relationship, Amber S. ("Amber"), who was ten years old. (Palmer Affirmation ¶¶ 7-12.) According to defendants, as a result of plaintiff's assault, Rose required extensive medical care to repair her jaw, which he had broken in three places, two ruptured eardrums, and facial contusions

---

[3]Defendants moved pursuant to both Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction, and Rule 12(b)(6) for failure to state a cause of action. As defendants point out in their memorandum of law in support of their motion, the 12(b)(1) motion cannot be converted to a summary judgment motion. *See Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) ("a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) may not be converted into a motion for summary judgment in the same way that a 12(b)(6) motion can.").

and lacerations. (Palmer Affirmation ¶¶ 12-14.) Plaintiff was indicted in Wayne County as a result of his actions, and plead guilty to assault in the second degree and three counts of endangering the welfare of a child. He is now serving a five year sentence in the Wyoming Correctional Facility in Attica, New York. (Palmer Affirmation ¶¶ 23-25.) These and other factual allegations in defendants' memorandum of law are supported by citations to Mr. Palmer's affirmation and Mr. Palmer's affirmation cites to attached exhibits. With regard to the allegations, above, the source is a Petition filed in Family Court of New York, County of Wayne, on November 1, 2001, Docket # N1877-1878.01, at 4 (attached to the Palmer Affirmation as Ex. E). The same Petition alleges that plaintiff has a serious drug and alcohol problem (mixing alcohol and crack cocaine, resulting in violent behavior), and that he had assaulted Rose on previous occasions (for example, pointing a shotgun at her head and threatening to kill her, and choking her until she lost consciousness). (Palmer Affirmation, Ex. E, at 2-3.)

Plaintiff's affidavit filed in response does not dispute that he pointed a loaded shotgun at Rose while threatening to kill her, or that he choked her to the point of unconsciousness, but states that, "[t]hese accusations concerning plaintiff were already litigated back in [sic] March 27, 2001 …" and that, "[t]hese accusations also found their way into plaintiff's indictment with little reconstruction." (Pl.'s Affidavit in Opposition to Defendants' Motion for Summary Judgment (# 30), filed on April 27, 2005, at 6.) Plaintiff admits to the "existence" of documents submitted by defendants, but refutes their accuracy. (Pl.'s Answer to Defendants' Affirmation in Support of Defendants' Motion to Dismiss (# 25), filed on March 8, 2005, ¶ 2.) Plaintiff also denies a drug or alcohol problem, and further contests that he mixed crack cocaine and alcohol. (Pl.'s "Answer" ¶ 9.)

Following the October 28, 2001 incident, Dalyn and Brittany were temporarily removed (Rose was in the hospital and plaintiff had been arrested, according to the removal Order). (Order Directing Temporary Removal of Child, No. N1877-1878-01 (Dec. 13, 2001), attached to Palmer Affirmation as Ex. F, at 2-4.) Amber was residing with her mother, Mary Guerrero, according to the Order. (*Id.* at 4.) Family Court in Wayne County issued a temporary Order of Protection against Rose and plaintiff, and specifically ordering plaintiff to have no contact with Brittany or Dalyn. (Temporary Order of Protection, No. N1877-1878-01 (Oct. 29, 2001), attached to Palmer Affirmation as Ex. K.)

On December 5, 2001, plaintiff withdrew a petition for return of his children that he had filed, and consented to the entry of a neglect finding without admission against him. (Fact-Finding Order, No. N-1877-1878-01 (Dec. 5, 2001), attached to Palmer Affirmation as Ex. N, at 2.) Timothy was born on January 3, 2002, and defendants filed a neglect petition with the Family Court on January 9, 2002. (Palmer Affirmation, Ex. O.) Family Court Judge Sirkin ordered Timothy removed on January 4, 2002. (Palmer Affirmation, Ex. P.)

At a dispositional hearing on April 26, 2002, Rose and plaintiff each appeared with their own counsel, and plaintiff consented to entry of a dispositional order holding, among other things, that plaintiff was forbidden to have any contact with Timothy, and that he was to obtain counseling for anger management, parenting skills, domestic violence (perpetrator) counseling, and drug and alcohol counseling. (Palmer Affirmation, Ex. Q, ¶¶ 9, 13.) The same disposition was entered with regard to Dalyn and Amber on September 19, 2002. (Palmer Affirmation, Ex. R. ¶¶ 8, 14.)

On November 8, 2002, legal and physical custody of Dalyn, Brittany and Amber was returned to Rose, by a Family Court Order entered August 18, 2002. (Palmer Affirmation, Ex. V.) However, the November 8, 2002 date was stayed in an Order to Show Cause entered on November 6, 2002. (*See* Palmer Affirmation, Ex. W at 2.) Subsequently, a hearing held on November 26, 2002, resulted in a Family Court Order entered February 14, 2003, staying the November 8, 2002 date, and extending it to January 25, 2003. Plaintiff appeared for the November 26, 2002 hearing, represented by counsel, and objected to placement of the children with Rose. (*Id.*) Subsequent orders, the details of which are not relevant here, ordered additional services for Rose and required the Wayne County Department of Social Services to monitor Rose's fourth child, James. (*See* Palmer Affirmation, Ex. Y.)

Through his attorney, plaintiff appealed the Family Court Order returning the children to Rose, but then withdrew that appeal upon learning that Rose had surrendered her parental rights. (Palmer Affirmation, Ex. Z.) It was during an October 2, 2003, hearing in Family Court that Rose executed the Judicial Surrender of Guardianship and Custody of Brittany, Dalyn, Timothy and James. (Palmer Affirmation, Ex. BB.) The resulting Order stated that the children were now in the custody of the Wayne County Department of Social Services and that the Department was "authorized and empowered to consent to the adoption of said children, subject to the legal rights of David Spickerman as the natural father[4] of the children, Brittany … and Timothy…." (*Id.*)

---

[4]Plaintiff is father of only these two children, whose last names the Court has omitted here. One of the two children listed does not have the same last name as plaintiff.

In a hearing on November 3, 2003, at which plaintiff was present with counsel, the Family Court determined that "each child [Brittany, Dalyn, Timothy and James] would be at risk of abuse or neglect if returned to Rose or David Spickerman." (Palmer Affirmation, Ex. CC, at 6.) The Family Court further found that neither parent had fulfilled the service plans devised and given to each of them and that the new permanency goal was adoption rather than return to the parents. (*Id*. at 3.)

On December 3, 2003, M. Josh McCrossen, Commissioner of the Wayne County Department of Social Services, filed a Notice, Permanent Neglect seeking an order freeing the children for adoption. (Palmer Affirmation, Ex. DD.) Hearings were held before Family Court Judge Sirkin on July 8, 2004 and August 6, 2004. (Palmer Affirmation, Ex. E.) Judge Sirkin determined that the children were permanently neglected. Judge Sirkin's Decision reflects the significant attempts defendants made to work with plaintiff to devise a plan for the care of the children while he was incarcerated, but that, ultimately, plaintiff had failed to present a viable plan, and had failed to "participate[] in any programs designed to effect changes in his social skills, aggression control, substance abuse or domestic violence awareness." (*Id*. ¶ I.)

Turning to the criminal matter, the documents submitted show that on December 14, 2001, plaintiff was ordered by Wayne County Court Judge Dennis Kehoe to have no contact[5] whatsoever with Rose or the children. (Palmer Affirmation, Ex. FF.) Plaintiff, on advice of counsel, entered guilty pleas to assault in the second degree and three counts of endangering the welfare of a child. (Palmer Affirmation, Exs. H & I.)  In pleading guilty,

---

[5]The Order expired on June 14, 2002. (Palmer Affirmation, Ex. FF.)

plaintiff acknowledged he was admitting that with regard to Brittany, Dalyn and Amber, he "knowingly acted in a manner likely to be injurious to the physical and mental or moral welfare of a child less than seventeen years old…." (Plea Tr., *People v. Spickerman*, No. 01-145 (Apr. 9, 2002), attached to Palmer Affirmation as Ex. H, at 9.) Plaintiff appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department, contending that the Wayne County Court failed to inquire into his justification defenses, the same ones he relates in his complaint in his lawsuit before this Court. (Palmer Affirmation, Exs. GG and HH.) In an opinion unanimously affirming his conviction and sentence, the Appellate Division stated,

> [w]e reject defendant's contention that County Court committed reversible error by not inquiring further into a possible justification defense that defendant contends was suggested during the plea colloquy. After he admitted his guilt on the charges of assault and endangering the welfare of his three children, defendant stated, "I'd like it to be known to the Court that what this, what this is about was, where she was taking my kids, they were being molested; and now, it is being proved. They haven't been—." The court did inquire into that statement, thereafter asking defendant, "So, I under-stand, your comment is, you are not disputing that what you admitted to is all that occurred; is that correct? You are simply saying that you had your reasons for doing what you did, as I understand it?" Defendant replied, "Well, really no reason for doing it * * *." The court followed up on that statement as well, asking, "But you are not disputing that all the, all the admissions you just made to me, they are all true; is that correct?" Defendant answered, "Yes."

*People v. Spickerman*, 307 A.D.2d 774, 775 (N.Y. App. Div. 2003). Likewise, the Appellate Division also rejected the issue raised by plaintiff in his *pro se* appellate brief:

> We reject the contention of defendant raised in his *pro se* supplemental brief that he was denied effective assistance of counsel by counsel's failure to move to dismiss the charges or to transfer the matter to Family Court on the ground that County Court lacked jurisdiction over these charges. At most, Family Court shares concurrent jurisdiction with the criminal court over all family offenses (*see* Family Ct Act § 115[e] ), including "any proceeding concerning acts which would constitute * * * assault in the second degree"

> (§ 812[1] ). Family Court does not have exclusive jurisdiction over family offenses. We have considered the remaining contentions in defendant's pro se supplemental brief and conclude that they are without merit.

*Spickerman*, 307 A.D.2d at 775-76.  Plaintiff's application for leave to appeal his conviction to the New York Court of Appeals was denied on September 15, 2003. *People v. Spickerman*, 100 N.Y.2d 624 (2003).

## STANDARDS OF LAW

### Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires a district court to dismiss a complaint when it "lacks jurisdiction over the subject matter." Federal subject matter jurisdiction exists when a "federal question" is presented under 28 U.S.C. § 1331, or, as provided in 28 U.S.C. § 1332, where the plaintiffs and all the defendants are of diverse citizenship and the amount in controversy exceeds $ 75,000. *See Perpetual Securities, Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). Where jurisdiction is lacking, the district court must dismiss the complaint notwithstanding the merits. *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996). The party seeking to invoke federal jurisdiction carries the burden of proof in establishing that jurisdiction. *See APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). The court may consider evidence beyond the pleadings to resolve disputed issues of fact pertaining to its jurisdiction. *See Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 (2d Cir. 2003). A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the "jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158

(E.D.N.Y. 1998) (*citing Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

### Summary Judgment

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. CT. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### *Rooker-Feldman Doctrine*

The *Rooker-Feldman* doctrine, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 US. 462 (1983), provides that, "because only the United States Supreme Court may review a final decision of a state

court, federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have been already decided, by a state court," regardless of the form of remedy sought in the district court. *Bridgewater Operating COT. v. Feldstein*, 346 F.3d 27, 29 (2d Cir. 2003); *see also, Kropelnicki v. Siegel*, 290 F.3d 118, I28 (2d Cir. 2002) ("Under the *Rooker-Feldman* doctrine, lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments."). "Essentially, the Rooker-Feldman doctrine bars collateral attack on a state court judgment which attempts to cloak the attack as a § 1983 action in federal court." *Davidson v. Garry*, 956 F. Supp. 265, 269 (E.D.N.Y. 1996); *see also, Huszar v. Zeleny*, 269 F. Supp. 2d 98, 103 (E.D.N.Y. 2003) ("plaintiff cannot circumvent *Rooker-Feldman* by recasting his claim as a civil rights violation"); *Kashelkan v. MacCartney*, 79 F. Supp. 2d 370, 372 (S.D.N.Y. 1999).

### *Younger Doctrine*

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court established the principle that federal courts generally should not enjoin or otherwise interfere with ongoing state proceedings. As described by the Second Circuit, "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also, Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 183 (2d Cir. 1991) (*Younger* abstention "derives from the recognition that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights"); *Kern v. Clark*, No. 01-CV-450S,

2004 U.S. Dist. LEXIS 8012, *31 (W.D.N.Y. April 9, 2004) ("The *Younger* abstention doctrine embodies 'bedrock principles of federalism.'")."When *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Diamond "D" Constr. Corp*, 282 F.3d at 197. Federal District Courts have dismissed cases under *Younger* where a parent's federal claims are considered to be a veiled attempt at the constitutional review of a state court's determination affecting their parental rights. *See e.g., Phifer v. City of New York*, No. 99 Civ. 4422 (DC), 1999 U.S. Dist. LEXIS 14436 (S.D.N.Y. Sept. 16, 1999); *Murray v. Administration for Childrens' Services*, No. 98 Civ. 7356(JSR), 1999 U.S. Dist. LEXIS 689 (S.D.N.Y. Jan. 25, 1999); *Thompson v. Vacco*, No. 96 Civ. 8670 (SS), 1997 U.S. Dist. LEXIS 13042, *9 (S.D.N.Y. Aug. 29, 1997) ("Numerous courts have held that abstention is appropriate where, as here, parents seek constitutional or other review of a state court's actions affecting parental rights."). "*Younger* abstention does not apply if (1) the state proceedings were brought in bad faith to harass the federal plaintiff, or (2) extraordinary circumstances compel the federal court to take jurisdiction." *Phifer*, 1999 U.S. Dist. LEXIS 14436, *5.

## DISCUSSION

Plaintiff contends in his Affidavit in Opposition to Defendants' Motion for Summary Judgment (# 30), filed on April 27, 2005, that material issues of fact preclude summary judgment. Specifically, he lists the following issues of fact:

> 1. Whether plaintiff's claims lack subject matter jurisdiction under the *Rooker-Feldman* doctrine, the Domestic Relations Exception to Federal jurisdiction, and under the *Younger* doctrine.

> 2. Whether defendants are entitled to absolute immunity.

3. Whether defendants can be held liable under § 1983 for failure to do what is required as well as for overt activity which is unlawful and harmful.

3 [sic]. Whether plaintiff's issues in question was [sic] actually heard and decided on in a prior court proceeding.

4. Whether Family Court has authority to hear or consider issues which reflect systematic violations under federal statutory scheme.

5. Whether defendants had afforded plaintiffs [sic] the procedural and agency protections necessary to protect their [sic] liberty interest in their [sic] familial relationships.

6. Whether defendants investigated plaintiff's claims of child abuse, including child molestation.

7. Whether defendants failed to protect plaintiff's children and provide them with appropriate legally required services.

8. Whether plaintiff had a full and fair opportunity to litigate the issues in Family Court.

9. Whether plaintiff['s] attorney failed or [re]fused to litigate plaintiff's claims against child protective.

10. Whether defendants removed plaintiff's children without just cause.

11. Whether defendants had placed an order of protection against plaintiff without just cause.

(Plaintiff's Statement of Disputed Factual Issues (# 31) filed on Apr. 27, 2005.)

The Court relies primarily on the documentation filed in New York Family Court, New York County Court and the New York appellate courts in making its ruling on defendants' motions. Plaintiff either does not dispute the accuracy of the court documents included in defendants' moving papers, or, in those instances where he issues a blanket denial of the documents' accuracy, he provides no specifics to substantiate his accusations, relying instead on unsubstantiated statements like, "[t]his court should not reply upon Defendants['] statements or documents because they are not accurate," (Pl.'s "Answer" ¶ 2), or

"[p]laintiff denies accuracy of Defendants['] exhibit 'F'," (Pl.'s "Answer" ¶ 10.) "Official

records are entitled to a presumption of regularity." *Webster v. Estelle*, 505 F.2d 926,

929-30 (5th Cir. 1974).

In his affidavits (one of which was entitled an "Answer"), plaintiff contends that the

court documents provided by defendants in their moving papers are inaccurate; however,

he fails to support his contention. For example, plaintiff alleges that defendants' Exhibit C,

an Office of Children and Family Services Child Protective Services Intake Report dated

October 15, 2004, was an "altered report." In that regard, he cites to Exhibit B to his

"Answer," which is a letter, dated February 1, 2002, from the State of New York, Office of

Children and Family Services, in Albany, in which the State Central Register's Director,

David R. Peters, indicated that his agency did not "find [plaintiff] to be the indicated subject

of the report [he] referenced in [his] letter."   (Pl.'s "Answer" ¶ 5.) The Court notes that

Exhibit C uses the term, "Algd Sub" in the category, "Role" under the heading "List of

Principals." Mr. Peters' letter does not explain the term, "indicated subject"; thus, the Court

determines that plaintiff has failed to show that Exhibit C is an altered report. In any event,

the Court does not rely on that exhibit in making its determination under Rule 12(b)(1).

In Plaintiff's Affidavit in Opposition to Defendants' Motion to Assert and Consolidate

an Additional Defense (# 37), plaintiff states that the exhibits he presented "are Court

generated, including the Court's orders, where the defendants['] exhibits are their own

generation of documents." Pl.'s Aff. in Opp'n (# 37) ¶ 18. Plaintiff does not explain what he

means by "court generated." Examining the exhibits the parties have presented, it appears

that plaintiff has presented many pieces of his own correspondence with those involved

in his family and criminal court cases. He has also provided copies of some petitions filed

in Family Court. The Court notes, by way of example, that plaintiff's Exhibit E is a copy of a Family Court Petition, Amendment to Article Ten for Docket # N1877-1878-01, dated February 28, 2002. In paragraph 13 of the Petition, background information about Rose Bush and her sister, Sandy Brown, is provided. Halfway down the page on which that paragraph is printed are hand-written notes, "Report made with State Troops in Wolcott –> against a court order made in March 2001" and a certain amount of text is underlined, and lettered-over (perhaps to make it darker for easier reading). This exhibit does not contain a facsimile of a court "filed" stamp, of the kind contained on most of the exhibits submitted by defendants, and, has clearly has been annotated by someone, who is not identified in the exhibit. Consequently, the Court rejects plaintiff's argument that defendants' exhibits cannot be considered because they are not "court generated."

Moreover, with regard to defendants' motion under Rule 12(b)(1), the burden of proof is on plaintiff. Thus, notwithstanding that the exhibits submitted by defendants are uncertified copies, plaintiff's allegations against defendants' exhibits are too general and too lacking in support in the record to raise any question as to their authenticity. Following its review of the proceedings in the Family and Wayne County Courts, the Court concludes that it is without subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. It is apparent to the Court that many, if not all, of the issues plaintiff raises here have been adjudicated in the State court proceedings, or are inextricably intertwined with those issues. Although plaintiff's complaint alleges causes of action against members of the executive branch of local government, the acts were undertaken to remove plaintiff's children were at the direction of the State court. In essence, then, defendant is attempting to appeal from

the judgments of the State Family and County courts through a § 1983 civil rights action

in this Court, which is contrary to the *Rooker-Feldman* doctrine.

The Court of Appeals provided the following guidance in applying the *Rooker Feldman* doctrine:

> We have held that "if the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker-Feldman* plainly will bar the action. On the other hand, … where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by *Rooker-Feldman*." [*Moccio v. New York State Office of Court Admin.*, 95 F.3d 195] at 198-99 [(2d Cir. 1996)].
>
> The *Moccio* court recognized that not all cases fall neatly into one of these extremes. *Id*. at 199. To address situations that fall between these two poles, *Moccio* articulated the following definition: "'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding …, subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion." *Id*. at 199-200 (*citing Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring) ("The federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.")); *see also Rivers* [*v. McLeod*, 252 F.3d 99], at 101 (*quoting Moccio* for the definition of "inextricably intertwined"). Thus, the court must consider two categories of preclusion: *res judicata* and collateral estoppel. *Moccio*, 95 F.3d at 200; *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 286 (S.D.N.Y. 2000). While *res judicata* does not bar the plaintiff's section 1983 claims in the instant case as the family court does not have the power to award monetary damages, *id*. at 287; *see also Fay v. S. Colonie Cent. Sch. Dist.*, 802 F.2d 21, 29 (2d Cir. 1986) (holding that plaintiff was not barred from pursuing his section 1983 claims for damages because the Article 78 court was without power to award monetary damages), collateral estoppel can be applied to the plaintiff's section 1983 claims to determine whether they are barred by *Rooker-Feldman*, *Moccio*, 95 F.3d at 200; *People United for Children*, 108 F. Supp. 2d at 287.

*Phifer v. City of New York*, 289 F.3d 49, 55-56 (2d Cir. 2002).

Family Court Judge Sirkin's November 10, 2004, decision in plaintiff's children's case indicates that the Family Court held a hearing on July 8 and August 6, 2004, at which time plaintiff was represented by counsel. In the his findings of fact, Judge Sirkin addressed plaintiff's allegation that defendants failed to arrange visitation for him with his children, and found that the Wayne County Department of Social Services did in fact offer the services of the children's foster parents to transport them to visit plaintiff, and did also consent to the children's transportation by plaintiff's sister. Judge Sirkin also noted, however, that Dr. Mark Reynolds, not a defendant in this case, reported in his evaluation of plaintiff, that based on allegations against plaintiff, contact between him and the children did not appear to be in the best interest of the children.

In addition, and relevant to the case at bar, Judge Sirkin also wrote that plaintiff failed to plan for his children's welfare in that he "refused to accept responsibility for his behavior and continues to blame other individuals for creating these conditions; indeed, [he] continues to reply on a 'justification defense' — unrecognized under any law — as a basis for his actions, maintaining that others are responsible for his situation . . . ." In the suit before this Court, plaintiff has alleged that defendants failed to investigate his allegations that his children had been sexually abused by others. This is precisely the type of issue that is inexorably intertwined with the State court proceedings, as Judge Sirkin indicates in his decision. Clearly, plaintiff had an opportunity to litigate that issue at the Family Court, or before the County Court. *See, e.g.,* Pl.'s Ex. I (letter to the New York Court of Appeals by plaintiff's counsel in which he argues that plaintiff believed his children were being sexually and physically abused and that the County Court failed to address the issue at plaintiff's guilty plea hearing). -

**CONCLUSION**

Having reviewed the proceedings in the New York Family and County Courts, this Court concludes that it is without subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Accordingly, the same issues plaintiff attempts to raise in this lawsuit are precluded, and the Court is without subject matter jurisdiction to adjudicate plaintiff's claims.

Therefore, defendants' motion (# 18) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction is granted, and this case is dismissed. Plaintiff's motion (# 5) for appointment of counsel, and defendants' motion (# 35) to assert and consolidate an additional defense, are both denied, as the Court lacks subject matter jurisdiction to consider them. The Clerk is directed to close the case.

It is So Ordered.

Dated: Janaury 17, 2006
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge